**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| BROWN MEDICAL CENTER, INC., | § | CIVIL ACTION NO. H-16-536 |
| | § | |
| Debtor. | § | |
| --------------------------------------------------- | § | CHAPTER 11 CASE NO. 13-36405 |
| | § | |
| ELIZABETH M. GUFFY, PLAN AGENT, | § | |
| | § | BANKRUPTCY ADVERSARY NO. 15-03269 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| GREENBERG TRAURIG, LLP and | § | |
| JEANNE CALDWELL MCDOWELL, | § | |
| | § | |
| Defendants. | § | |

---

**DEFENDANT GREENBERG TRAURIG, LLP'S MOTION**
**(I) TO DISMISS FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE,**
**(II) FOR A MORE DEFINITE STATEMENT**

TO THE HONORABLE LEE H. ROSENTHAL, UNITED STATES DISTRICT JUDGE:

Defendant Greenberg Traurig, LLP ("GT" or "Defendant") hereby moves (the "Motion"), pursuant to Rules 8(a), 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure (the "Federal Rules"), (i) to dismiss Plaintiff's First Amended Complaint (the "Amended Complaint") or, in the alternative, (ii) for a more definite statement, and in support thereof, would respectfully show the Court as follows:

**SUMMARY OF MOTION**

1.     The Plan Agent's Amended Complaint fails to address the fundamental flaw in the Plan Agent's prior complaint:  the failure to plead specific and plausible allegations that any of the alleged transfers to GT constitute property of Brown Medical Center, Inc. ("BMC") as

opposed to property of Michael Glynn Brown ("Brown") or any of his related entities.  Both the Plan Agent's Original Complaint and the Amended Complaint acknowledge that at least some – if not all – of the alleged transfers came from accounts held in the name of a person or entity other than BMC.  Moreover, the Plan Agent's predecessor has described BMC in pleadings filed in BMC's bankruptcy case as effectively a collection and disbursement agent for operating entities rather than the true owner of any of the funds passing through the accounts.  Absent specific and plausible allegations that the alleged transfers were of funds owned by BMC or allegations supporting any conclusory statement that BMC otherwise had a beneficial interest in funds held in the name of a non-debtor entity, the Plan Agent has not and cannot plead the most fundamental element of any fraudulent transfer claim—that the property allegedly transferred was property of the debtor.

2.      In addition, the Amended Complaint fails to identify a creditor whom the Plan Agent relies upon for standing to assert a claim under Bankruptcy Code section 544.  The Plan Agent bears the burden of identifying a creditor of the BMC estate with an allowed claim that arose prior to the alleged transfer dates and who could have brought a fraudulent transfer claim under applicable state law prior to BMC's bankruptcy petition date.  The Amended Complaint fails to plead any specific and plausible allegations regarding any such creditor.

3.      Finally, the Plan Agent's claims for attorneys' fees and costs fail as a matter of law.  Bankruptcy Code section 550 is the exclusive remedy provision for fraudulent transfer claims (whether brought under sections 544 or 548) and section 550 simply does not authorize the recovery of attorneys' fees or costs.

4.      Accordingly, each claim asserted in the Amended Complaint should be dismissed.

## PROCEDURAL BACKGROUND

5.      On January 23, 2013, Brown filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Florida, Case No. 13-11484-RAM.  Complaint, ¶ 24.  That case was later transferred to the United States Bankruptcy Court for the Southern District of Texas, Case No. 13-35892.  *Id.*

6.      On October 15, 2013 (the "Petition Date"), Ronald Sommers, chapter 11 trustee for Brown, filed a voluntary chapter 11 bankruptcy petition on behalf of Brown Medical Center, Inc. ("BMC") in the United States Bankruptcy Court for the Southern District of Texas, Case No. 13-36405.  *Id.*, ¶ 25.  On October 24, 2013, the Bankruptcy Court entered an order appointing Elizabeth M. Guffy as chapter 11 trustee of BMC.  *Id.*   On October 1, 2014, the Bankruptcy Court confirmed a plan of liquidation in the BMC case pursuant to which Ms. Guffy was appointed as the Plan Agent (the "Plan Agent").  *Id.*, ¶ 26.

7.      On October 13, 2015, the Plan Agent filed the Original Complaint against GT and Jeanne Caldwell McDowell (collectively, the "Defendants").  The Original Complaint sought to avoid certain alleged fraudulent transfers pursuant to (i) Section 548 of the Bankruptcy Code and (ii) Section 544 of the Bankruptcy Code and Section 24.001 of the Texas Business and Commerce Code.  By agreement of the parties, GT's deadline to answer, move or otherwise respond to the Plan Agent's Complaint was extended to January 8, 2016.

8.      On January 8, 2016, GT filed a *Motion to Dismiss* the Original Complaint.

9.      On the same day, GT also filed a *Demand for Jury Trial* (the "Jury Demand") and a *Joinder in Defendant Jeanne Caldwell McDowell's Motion to Withdraw the Reference* (the "Joinder").

10.     On March 31, 2016, this Court entered a *Memorandum and Order* withdrawing the reference of the above-captioned adversary proceeding from the U.S. Bankruptcy Court.

11.     On April 29, 2016, the Plan Agent attempted to address pleading deficiencies identified in GT's original Motion to Dismiss by filing the Amended Complaint rather than respond to the Motion to Dismiss.

## APPLICABLE LEGAL STANDARDS

### A.     Federal Rule 8.

12.     Federal Rule 8(a) requires a plaintiff to give the defendant fair notice of the nature of the claim and grounds for it, including the demand for judgment the plaintiff seeks.  *See* FED. R. CIV. P. 8.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  Accordingly, the standard for pleading under Rule 8(a) is a "plausibility" standard, which is greater than the "possibility" standard many lower courts previously articulated and less than a "probability" standard.  *Id.* at 564, 570.  "[B]are assertions" that constitute "nothing more than formulaic recitations of the elements" of a cause of action without reference to factual context is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1951 (2009).

### B.     Federal Rule 12(b)(6).

13.     Federal Rule 12(b)(6) authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 129 S.Ct. at 1950.  A complaint must plead "allegations plausibly suggesting (not merely consistent with)" each element of a plaintiff's cause of action.  *Twombly*, 550 U.S. 544, 557.  Allegations that "stop short of the line between possibility and plausibility" fail to state a claim and must be dismissed.  *Id.* "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278,

284 (5th Cir. 1993); *see also Iqbal*, 129 S.Ct. at 1949-51.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement' or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 129 S.Ct. at 1949-51 (quoting *Twombly*, 550 U.S. at 557).  "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."  *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina Cana Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

**C.**     **Federal Rule 12(e).**

15.     Federal Rule 12(e) requires a more definite statement of the factual allegation if a complaint is vague or ambiguous.  *See* FED. R. CIV. P. 12(e); *Sisk v. Tex. Parks & Wildlife Dep't*, 644 F.2d 1056, 1059 (5th Cir. 1981).  If the court grants a Rule 12(e) motion, the plaintiff must re-plead within fourteen (14) days after notice of the order or as scheduled by the court.  *See* FED. R. CIV. P. 12(e).  If the plaintiff does not re-plead by the deadline, the court may strike the complaint or issue any other appropriate order.  *Id.*

## ARGUMENT AND AUTHORITIES

15.     The Plan Agent's claims must be dismissed because the Amended Complaint fails to adequately plead specific and plausible allegations that: (i) any of the alleged transfers constituted property of BMC; and (ii) there is a unsecured creditor that affords the Plan Agent standing to assert a claim under section 544.  In addition, the Plan Agent's claim for attorneys' fees and costs fail as a matter of law because section 550 does not provide for the recovery of such fees or costs.

**A.      The Plan Agent Has Not Adequately Pled that Any of the Alleged Transfers Were Property of the Debtor's Estate.**

16.      "In order to bring property into the estate as a fraudulent conveyance, the trustee must first show that the transfer was 'of an interest of the debtor in property.'"  *Krommenhoek v. A-Mark Precious Metals, Inc. (In re Bybee)*, 945 F.2d 309, 315 (9th Cir. 1991); 11 U.S.C. § 544(a) (permitting the avoidance only of a "transfer of property **of the debtor**") (emphasis added); 11 U.S.C. § 548(a)(1) (permitting the avoidance only "of an interest **of the debtor** in property") (emphasis added); *Stettner v. Smith (In re IFS Fin'l Corp.)*, 669 F.3d 255, 261 (5th Cir. 2012) ("Property of the debtor" that can be avoided and recovered under sections 544 and 550 is "that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings.") (quoting *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990)).  Moreover, that interest must be more than "bare legal title" to the property.  *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983) ("The legislative history indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title.").

17.      The Amended Complaint fails to plead any specific or plausible allegations supporting a conclusion that the allegedly transferred funds, which came from Brown or entities other than BMC, were somehow property of BMC.  Rather, the Amended Complaint pleads only an inconsistent and conclusory statement regarding BMC's interest in the allegedly transferred funds that came in part, if not entirely, from accounts in the name of an entity other than BMC. *See* Amended Complaint, ¶ 19 (acknowledging that at least some of the funds allegedly transferred to GT came "through other accounts, including a personal account of Brown").  The Amended Complaint fails to plead which, if any, of the alleged transfers came from accounts that were actually in the name of BMC.  The Amended Complaint further fails to plead any specific

or plausible allegations that could support a conclusion that funds in accounts held in the name of a non-debtor entity nevertheless constituted property of BMC.

18.     Indeed, any suggestion that funds held in the non-BMC accounts were property of BMC would be inconsistent with prior representations by the Plan Agent's predecessor.  BMC's bankruptcy pleadings characterized BMC as essentially a collection and disbursement agent for other entities that generated the account receivables and acknowledged that BMC held property belonging to others.  *See* Bankr. Case No. 13-36405, Dkt. Nos. 2, 3, 4, 65, & 77.[1]  Indeed, BMC's standard master service agreement specifically provides that title to any accounts receivable received by BMC belong to the entity that generated the account receivable.  *Id.*, Dkt. No. 77 at Ex. 2, Art. 4.7.5 (non-debtor entity using the BMC's management services "shall retain all rights in and to such deposited funds irrespective of their deposit into the Depository Account" and BMC is acting as the non-debtor's "agent" and "all rights to such funds shall remain with" the non-debtor).

19.     Applicable pleading standards require the Plan Agent to identify, at the very least, the account from which each alleged transfer was made, and, with respect to an account that was not in the name of BMC, plead specific and plausible allegations supporting any contention that the funds transferred were property of BMC rather than a non-debtor entity.

---

[1] *See e.g.,* BMC's *Emergency Motion for Authority to Use Cash Collateral*, Dkt. No. 2, at ¶ 4 ("the Debtor has been responsible for collecting and administering accounts receivable for each of the surgery centers and their affiliates in exchange for a percentage fee.  Historically, the Debtor has collected the receivables and remitted funds in accordance with its agreements, including funds to pay for the operating expenses for the various surgery centers, clinics, and laboratories."); BMC's *Emergency Motion for Order Pursuant to 11 U.S.C. §§ 105, 345, 363, 364, 1107 and 1108 and Authorizing (I) Continued Use of Existing Cash Management System, Bank Accounts, and Business Forms; and (II) Granting Waiver of Investment and Deposit Requirements,* Dkt. No. 3, at ¶ 11 ("BMC calculates its management fee based, in part, upon the funds actually received in each of those respective bank accounts and then disbursing the residual funds to the appropriate facility or to pay certain expenses associated with the business."); *Statement of Financial Affairs*, at Dkt. No. 65, ¶ 14 (admitting that "[t]he Debtor is holding property that may be owned by Michael G. Brown or entities owned or controlled by Michael G. Brown.").

This Court is authorized to take judicial notice of these documents.  *See e.g.*, *In re Think3, Inc.*, 529 B.R. at 171 ("[A] court may properly take judicial notice under certain circumstances with respect to a Rule 12(b)(6) motion.").

20.     Without such basic allegations and information, GT cannot adequately formulate its affirmative defenses or otherwise defend against the Plan Agent's Amended Complaint. *See In re Motorwerks, Inc.*, 371 B.R. at 293 ("In determining whether a transfer is adequately identified, a good test "'is to ask whether the defendant could respond to [the claim for relief] with an appropriate affirmative defense.'") (quoting *Birdsell v. U.S. West Newvector Group, Inc. (In re Cellular Express of Ariz., Inc.)*, 275 B.R. 357, 363 (Bankr. D. Ariz. 2002)).

21.     For example, the Plan Agent would not have standing to assert fraudulent transfer claims based on non-debtor transfers; rather, the trustee(s) for those respective estates would be the proper party to bring any such fraudulent transfer claims, and such claims, if any, may now be barred the applicable statute of limitations.[2]  Indeed, GT has already been sued by the Chapter 7 Trustee for the Brown estate to avoid certain transfers (*see* Adv. No. 15-03019, Complaint, ¶ 6, identifying a $392,000 transfer).  The Plan Agent sought to recover that same transfer within the Original Complaint.  A pleading that identified the accounts from which each of the alleged transfers were made would likely show that other alleged transfers were also made from funds owned by a non-debtor entity.  GT previously settled claims of Brown's estate and should not be required to incur fees defending claims previously settled or that belong to an estate other than BMC's.  *See* Bankr. Case No. 13-35892, Dkt. Nos. 2400 & 2434.[3]

22.     Because the Amended Complaint fails to plead specific and plausible allegations regarding BMC's interest in funds allegedly transferred, Counts 1 and 2 must be dismissed.

---

[2] *See* 11 U.S.C. § 548(a)(1) (authorizing the avoidance of certain transfers made by "the debtor"); *In re GWI PCS I Inc.*, 230 F.3d 788, 805 (5th Cir. 2000) (necessary element of a constructive fraudulent transfer claim under section 548 includes an allegation that "the debtor transferred an interest in property"); *In re Greenhaw Energy, Inc.*, 359 B.R. 636, 648 (Bankr. S.D. Tex. 2007) (Trustee failed to adequately plead fraudulent transfer claim because there were no plausible allegations that the debtor was "the party to make the transfer").

[3] If the Plan Agent was not required to plead and prove that the transfers at issue constituted funds of BMC as opposed to another entity, GT would be faced with satisfying the same claims multiple times.

**B.      The Plan Agent Has Not Adequately Pled Standing to Assert a State Law Fraudulent Transfer Claim Under Bankruptcy Code Section 544.**

23.      "A trustee's rights to avoid a transfer are derivative of an actual unsecured creditor's rights."  *Smith v. Am. Founders Fin'l Corp.*, 365 B.R. 647, 659 (Bankr. S.D. Tex. 2007); *U.S. Bank  Nat. Ass'n v. Verizon Communications, Inc.*, 479 B.R. 405, 410 (N.D. Tex. 2012) ("a bankruptcy trustee can bring a fraudulent transfer action under Section 544(b) only if there is a 'triggering' unsecured creditor that could have brought such an action when the bankruptcy petition was filed.").

24.      Accordingly, the Plan Agent bears the burden of showing the existence of an unsecured creditor that both: (i) holds an allowable unsecured claim against the debtor; and (ii) could have asserted the fraudulent transfer claims under applicable state law had the bankruptcy petition not been filed.  *Am. Founders Fin. Corp.*, 365 B.R. at 659 ("The burden is on the trustee seeking to avoid the transfer to demonstrate the existence of an actual creditor with a viable cause of action against the debtor, which is not time-barred or otherwise invalid.").[4]

25.      Moreover, any such creditor must have been a creditor of the BMC estate rather than of Brown or an entity affiliated with Brown.  Bankruptcy Code section 544 does not permit the Plan Agent to ignore corporate formalities and treat a transfer of one debtor's property as a transfer of all the debtors' property.  *See Am. Founders Fin'l Corp.*, 365 B.R. at 659-73 (analyzing standing on a debtor-by-debtor basis); *In re Am. Intern. Refinery*, 2009 WL 8602809, at *9 (Bankr. W.D. La. Dec. 22, 2009) ("courts observe corporate formalities in the context of

---

[4] *See also Tyrit Enters. v. Gen. Elec. Capital Corp. (In re Tryit Enters.)*, 121 B.R. 217, 222 (Bankr. S.D. Tex. 1990) ("In order to prevail under 11 U.S.C. § 544(b), one must establish first that, at the time that the transaction at issue occurred, there was in fact a creditor in existence who was holding an allowed unsecured claim, and second, that the transaction could have been avoided by such creditor under applicable state law."); *In re 9281 Shore Road Owners Corp.*, 187 B.R. 837, 851 (E.D.N.Y. 1995) ("trustee must demonstrate that there existed an actual unsecured creditor at the time of the transfer . . . whose shoes the trustee may step into so as to avoid the transfer under applicable state law.").

fraudulent transfer claims absent grounds to pierce the corporate veil"); *Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 80, 94-97 (S.D.N.Y. 2008), *aff'd*, 379 Fed. Appx. 10 (2d Cir. 2010) (litigation trust could not rely on creditors of debtors who had not made the alleged fraudulent transfer for standing to assert a fraudulent transfer claim under section 544).[5]

26.     The Amended Complaint fails to identify a creditor holding an allowable claim against the BMC estate who could have also avoided the alleged transfers under state law prior to the BMC bankruptcy petition date or otherwise plead any specific or plausible allegations regarding the existence of any such creditor.[6]  Such deficient pleading does not satisfy *Twombly* or *Iqbal*.  *In re Petters Co., Inc.*, 495 B.R. 887, 889 (Bankr. D. Minn. 2013) ("the Trustee's generalized statement that 'there was and is at least one or more creditors' within the contemplation of § 544(b), does not meet muster under Rule 8(a), in the wake of *Twombly* and *Iqbal* . . ."); 5 COLLIER ON BANKRUPTCY (16th ed. 2014), ¶ 544.06[1] ("At some point, then, the trustee will have to identify the actual creditor or creditors who could have set aside the transaction in question under applicable law; it makes senses to do this at the pleading stage..."). "To defend early on the issue of standing or even the merits, defendants have a right to notice via pleading, of the identity of the predicate creditor."  *In re Petters Co.*, 495 B.R. at 900.[7]

---

[5] *See also In re Foxmeyer Corp.*, 296 B.R. 327, 335 (Bankr. D. Del. 2003) (parent corporation's dividend payment was not a fraudulent transfer with respect to creditors of the parent's subsidiaries); *Lippe v. Bairnco Corp.*, 230 B.R. 906, 914-15 (S.D.N.Y. 1999) (trustee of parent's subsidiary did not have standing to avoid a transfer made by the parent); *In re Regency Holdings (Caymen), Inc.*, 216 B.R. 371, 375 (Bankr. S.D.N.Y. 1988) ("As a rule, parent and subsidiary corporations are separate entities, having separate assets and liabilities . . . Hence, the parent's creditors have no claim to the subsidiary's assets, and *vice versa*.").

Moreover, Bankruptcy Code section 544 refers to "debtor," "creditor", and "transfer" all in the singular.  *See* 11 U.S.C. § 544(b).

[6] At most, the Amended Complaint makes the following statement that is conclusory if not simply an attempt to assert a necessary element of the fraudulent transfer claim:  "A creditor whose claim arose before the occurrence of the Transfers for whom the Plan Agent can act."  Amended Complaint, ¶ 34.

[7] Although some courts have held that the plaintiff need not identify the creditor that the trustee relies upon for standing at the pleading stage, such decisions preceded the Supreme Court's *Twombly & Iqbal*.  Moreover, as the *Petters* Court recognized, requiring the Plan Agent to identify a creditor the Plan Agent relies upon for standing is not simply "an abstract concern."  *In re Petters*, 495 B.R. at 900.  The Trustee "steps into the shoes" of the creditor

27.     Because the Amended Complaint fails to plead specific and plausible allegations regarding the existence of a creditor upon which the Plan Agent can rely for standing, Count 2 must dismissed.

## C.     The Plan Agent Cannot Recover Attorneys' Fees and Costs as a Matter of Law.

28.     "In federal court, the American Rule prohibits awards of counsel fees to a prevailing party absent statutory authority . . . ." *Asarco v. Hordan Hyden Womble Culbreth & Holzer, P.C. (In re Asarco, LLC)*, 751 F.3d 291, 301 (5th Cir. 2014).

29.     The Bankruptcy Code includes distinct provisions governing the extent to which a transfer can be avoided, and, the separate issue of available remedies upon establishing that a transfer is avoidable.  Sections 544 and 548 define the extent to which a transfer can be avoided, with section 544 incorporating the applicable state law elements for avoiding a transfer. However, whether the claim is under section 544 or 548, section 550 defines the scope of permissible remedies.  *See In re Cahillane*, 408 B.R. 175, 214 (Bankr. N.D. Ind. 2009); *In re Teligent, Inc.*, 307 B.R. 744, 750 (Bankr. S.D.N.Y. 2004) ("Section 550 is the exclusive remedy for the plaintiff's § 544(b) claim).

30.     Section 550 authorizes only the recovery of the transfers or their value—there is no authorization for attorneys' fees or costs.  11 U.S.C. § 550(a).[8]  *See also In re Teligent, Inc.*, 307 B.R. at 749 ("Section 550 restricts the trustee to the recovery of the avoided transfer, or its

---

the Plan Agent relies upon for standing such that state law affirmative defenses like ratification, estoppel, waiver, in pari delicto, and others that would bar the creditor's claim will also bar the Plan Agent's claim.  *Id.*; *Crescent Resources Litigation Trust v. Duke Energy Corp.*, 500 B.R. 464 (W.D. Tex. 2013) (dismissing fraudulent transfer claims in part because the creditors who stood to benefit from the claims would be barred from brining the claims under state law defenses of consent, ratification, or estoppel).  Accordingly, GT must know the identify of the creditor or creditors upon whom the Plan Agent relies for standing to evaluate the Plan Agent's standing to assert the claims at issue and all applicable defenses.

[8] Section 550(a) provides: "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property."  11 U.S.C. § 550(a).

value"); *In re Brentwood Lexford Partners, LLC*, 292 B.R. 255 (Bankr. N.D. Tex. 2003) ("the court cannot invoke state law remedies to circumvent or undermine the specific remedy legislated by Congress for the avoidance of a fraudulent transfer").[9]

31.     Accordingly, the Plan Agent's claim for attorneys' fees and costs must be dismissed as a matter of law.

## MOTION FOR A MORE DEFINITE STATEMENT

32.     GT incorporates each of the paragraphs above as set forth herein.

33.     The Plan Agent has already been afforded an opportunity to correct the pleading deficiencies within the Original Complaint.  The Amended Complaint's failure to address fundamental deficiencies within the Original Complaint suggests further amendments would be futile.  Accordingly, GT asserts that the Amended Complaint should be dismissed without further opportunity for re-pleading.

34.     Alternatively, however, and solely to the extent the Court allows some or all of the Plan Agent's claims to proceed, GT respectfully requests that the Court require the Plan Agent to plead with more specificity as alleged above.  Without more specific allegations, the Amended Complaint is ambiguous, vague, and prejudices GT's ability to properly answer.

## PRAYER

35.     For the reasons set forth herein, GT respectfully requests that the Court grant the Motion and dismiss all claims in the Plan Agent's Amended Complaint.  Alternatively, and solely in the event that the Court does not dismiss all claims in the Amended Complaint, GT

---

[9] Although some courts have permitted attorneys' fees for claims under section 544, they have done so without analysis and ignored the distinction between avoidance under section 544 and the incorporated applicable state law, on the one hand, and the separate and independent inquiry of remedy under section 550, which does not incorporate any state law fraudulent transfer provisions, on the other hand.

respectfully requests that the Court require the Plan Agent to further amend the Amended Complaint setting forth a more definite statement of the allegations contained therein.

Dated:  May 13, 2016.                              Respectfully submitted,

                                                  **NORTON ROSE FULBRIGHT US LLP**

                                                  */s/ William R. Greendyke*

                                                     William Greendyke
           Attorney-in-Charge
           TX Bar No. 08390450
           S.D. Tex. No. 576573
           Jason L. Boland
           TX Bar No. 24040542
           S.D. Tex. No. 37238
           Bob B. Bruner
           TX Bar No. 24062637
           S.D. Tex. No. 996298
       1301 McKinney, Suite 5100
       Houston, Texas 77010
       Telephone: (713) 651-5151
       Facsimile:  (713) 651-5246
       william.greendyke@nortonrosefulbright.com
       jason.boland@nortonrosefulbright.com
       bob.bruner@nortonrosefulbright.com

       *Attorneys for Defendant Greenberg Traurig, LLP*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served via the CM/ECF system to all parties registered to receive such service, and by electronic transmission to the below counsel for the Plan Agent on May 13, 2016.

_/s/ Jason L. Boland_
Jason L. Boland
TX Bar No. 24040542

**Special Litigation Counsel for the
Plan Agent, Elizabeth M. Guffy:**

Timothy M. McCloskey
Carrigan McCloskey & Roberson, L.L.P.
945 Heights
Houston, TX 77008

Blake E. Rizzo
Carrigan McCloskey & Roberson, L.L.P.
945 Heights Blvd
Houston, TX 77008

Thomas A. Woolley, III
Carrigan McCloskey & Roberson, L.L.P.
945 Heights Blvd
Houston, TX 77008